IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT STACEY HILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CV3253 |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG RICHARDSON, C.M., et. al. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment (filing no. 131), Defendants' Motion to Dismiss Plaintiff's Motion to Intervene (filing no. 124), and Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment (filing no. 127).

## *MOTION FOR SUMMARY JUDGMENT*

## I.    PROCEDURAL HISTORY

Plaintiff filed this § 1983 civil rights action on July 26, 2004. Because this case has an extensive procedural history, the court will outline the previous rulings in this case and identify which claims remain for this summary judgment determination.

In his Complaint filed on July 26, 2004, Plaintiff named Harold Clarke, Director of Nebraska Department of Corrections, Officer Chase, Craig Richardson, Lt. Bailey, Teresa Predmore, Brad Exstrom, Officer Jara, Warden Kenney, and Randy Kohl as Defendants. (Filing No. 1.) On October 25, 2004, this court conducted an initial review of Plaintiff's Complaint and gave Plaintiff 30 days to file a Supplement to his Complaint stating whether he was suing Defendants in their individual or

official capacities or both.  (Filing No. 12.)  On November 5, 2004, Plaintiff filed a "Supplement to Complaint" stating that he was suing Harold Clarke, Mike Kenney, Randy Kohl, Lt. Bailey, and Teresa Predmore in their official and individual capacities.  Further, Plaintiff stated that he was suing Defendants C.W. Chase, Craig Richardson, Officer Jara, and Brad Exstrom in their individual capacities.  (Filing No. 14.)

On January 7, 2005, Defendants Harold Clarke and Craig Richardson filed a Motion to Dismiss.  (Filing No. 31.)  On that same date, Defendants Unknown Jara, Unknown Kenney, Randy Kohl, C.W. Chase, Unknown Bailey, Teresa Predmore, and Brad Exstrom filed a Motion to Dismiss.  (Filing No. 33).  On February 10, 2005, Plaintiff filed a Motion for Leave to File an Amended Complaint and attached a copy of the proposed Amended Complaint.  (Filing Nos. 41 & 42.)  On March 1, 2005, Defendants filed renewed Motions to Dismiss asking the court to dismiss Plaintiff's Amended Complaint.  (Filing Nos. 43 & 45.)  The court entered a Memorandum and Order on June 21, 2005 addressing the motions.  (Filing No. 54.)  In that order, the court dismissed Plaintiff's claims for injunctive relief as moot, and dismissed Harold Clarke as a Defendant from this action.  The court also noted that many Defendants had not been properly served and gave Plaintiff an extension of time to complete service of process. (Filing No. 54.) Furthermore, the court granted Plaintiff's Motion for Leave to File an Amended Complaint (filing no. 42) and accepted the Amended Complaint (filing no. 43) for filing instanter.  In his Amended Complaint, Plaintiff named as Defendants Harold Clarke; Mike Kenney; Randy Kohl; Lt. Bailey; Teresa Predmore; Byron Smith; Richard Elliot; M. Stelling; Danaher P.A. in their individual and official capacities, Craig Richardson; Officer Jara; Officer Chase; Brad Exstrom in their individual capacities, and the Nebraska Department of Corrections.

On April 13, 2006, Defendant Nebraska Department of Corrections filed a Motion to Dismiss.  (Filing No. 92).  On April 14, 2006, Defendants Unknown Jara, Randy Kohl, Richard Elliot, Mike Kenney, Unknown Bailey, Unknown Danaher,

2

Nebraska Department of Corrections, Craig Richardson, Teresa Predmore, and Brad Exstrom, filed a Motion for Summary Judgment. (Filing No. 94.) On November 9, 2006, the court entered a Memorandum and Order addressing Defendants' motions. (Filing No. 96.) In its order, the court dismissed the claims against the Nebraska Department of Corrections and the named Defendants in their official capacities based on Eleventh Amendment immunity, and because Plaintiff's claims for injunctive relief were moot. Furthermore, because Plaintiff still had not properly served Defendants Smith, Stelling, Predmore, Elliot, and Danaher in their individual capacities, and because the claims against them in their official capacities were dismissed, the court dismissed those Defendants from this action. Finally, because Defendant Chase had not been served properly in either his individual or official capacity, Defendant Chase was dismissed from this action. Accordingly, the court explained that the only remaining claims in this litigation were Plaintiff's claims for damages against Defendants Richardson, Exstrom, Kenney, Kohl, Bailey, and Jara in their individual capacities. (*See* Filing No. 96 at CM/ECF p. 6.)

Defendants Jara, Kohl, Kenney, Bailey, Nebraska Department of Corrections, Richardson, and Exstrom filed a Motion for Summary Judgment. (Filing No. 131.) Accompanying the Motion is an Amended Brief in Support of Summary Judgment (filing no. 122) and two Indexes of Evidence in Support of the Brief (filing nos. 123 & 113).[1] Plaintiff filed a Response to Defendants' first Motion and Brief for Summary Judgment attaching 27 Exhibits. (Filing No. 115.) Further, Plaintiff filed a Brief responding to Defendants' Amended Brief in Support of Summary Judgment and an Index of Evidence. (Filing Nos. 128 & 129.)

---

[1]In response to the Memorandum and Order denying Defendants' first Motion for Summary Judgment and directing the Defendants to file another summary judgment motion, brief, and evidence, Defendants filed an Amended Brief in Support of Summary Judgment (filing no. 122) and a Supplemental Index in Support of Motion for Summary Judgment (filing no. 123.)

3

The Federal Rules of Civil Procedure and the court's Local Rules require that evidence in support of a motion for summary judgment be "authenticated by affidavit." NECivR 7.1(b)(2)(C); *see also Stuart v. General Motors Corp.*, 217 F.3d 621, 636 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered.").

Additionally, the party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

The court has carefully reviewed the documents submitted by both parties. Defendants' Amended Brief on Summary Judgment (filing no. 122) and Plaintiff's responsive brief to Defendants' Amended Brief on Summary Judgment (filing no. 129) each contain a statement of material facts in accordance with the court's Local Rules. Further, Defendants have submitted evidence which was properly authenticated by affidavit in their two Indexes (filing nos. 122 & 113.) Liberally construed, Plaintiff has submitted evidence that was properly authenticated in his Index of Evidence (filing no. 129.) In light of this, the court considers all of these submissions in resolving the only claims that remain in this action, the Plaintiff's

4

claims for damages against Defendants Richardson, Exstrom, Kenney, Kohl, Bailey, and Jara in their individual capacities.

## II.    RELEVANT UNDISPUTED FACTS

1.      At all times relevant to this action Plaintiff was an inmate in the custody of the Nebraska Department of Correctional Services ("DCS") at the Nebraska State Penitentiary ("NSP").  (Filing No.42 at CM/ECF p. 1.)

February 1, 2004 Incident

2.      On February 1, 2004, Plaintiff requested that Defendant Chase call medical staff because Plaintiff believed he had a pinched nerve in his lower back.  (*Id*. at CM/ECF p. 2)  Because Plaintiff was on bunk restriction, Plaintiff was instructed to return to his bunk and file a kite with medical.  (*Id*. at CM/ECF p. 3.)  Plaintiff did not return to his bunk and requested a grievance so he could request emergency medical attention due to his alleged pinch nerve.  *Id.*

3.      Plaintiff was informed that if he did not return to his bunk he may be sent to holding.  (Filing No. 113, Attach.  2.)  Plaintiff still refused to return to his bunk.  A few minutes later, Officer Jara informed Plaintiff that he was being taken to holding for refusing to get in his bunk.  (Filing No. 123, Attach. 2, at CM/ECF p. 1.)

4.      On the way to holding, Plaintiff fell on his back and neck.  (*Id*.)  Defendants state that as Plaintiff stepped out of his unit he looked at Defendant Jara and smiled, planted his right leg and kicked out his left leg and fell on his back.  (*Id*.)  Plaintiff claims that after the guards handcuffed him he was forced to walk on snow and ice without assistance, slipped on the snow and ice, and was left on the ground in pain for about 20 minutes.  (Filing No. 42, CM/ECF p. 3.)  Plaintiff alleges that

when officers Jara, Chase and Richardson finally picked him up they threw him into a wheelchair causing the Plaintiff to yell out in pain. (*Id.*)

5.    The guards took Plaintiff to holding. (Filing No. 123, Attach. 2.) Because Plaintiff was complaining of back pain he was seen by nurse Marlene Stelling in holding that night. (Filing No. 113, Attach. 5.). Plaintiff told Nurse Stelling that he had numbness in his legs and experienced pain in his lower back. (*Id.*). Plaintiff requested a lower bunk, but because Plaintiff was on bunk restriction he was informed that he would have to stay in the upper bunk. (*Id.*) Nurse Stelling advised Plaintiff to continue taking acetaminophen and gave Plaintiff an ice bag with a pass for two days. (*Id.*)

6.    That same day, Plaintiff was released from holding and returned to his unit. (Filing No. 42 at CM/ECF p. 3.) Once returned to his unit, Caseworker Johnson gave Plaintiff a direct order from Defendant Bailey to get on his top bunk. (*Id.*)

Medical Treatment After February 1, 2004 Incident

7.    In response to a medical kite, Plaintiff saw Physician Assistant ("PA") Dan Danaher on February 5, 2004. (*Id.* at Attach. 7.) Danaher informed Plaintiff that the x-rays taken of his back and shoulder prior to the February 1, 2004 incident showed "negative for the shoulder but the lumbar spine did show some changes maybe consistent with mild degenerative joint disease, etc." (*Id.*) Plaintiff requested that Danaher give him a bottom bunk, crutches, and one hour additional activity outside normal bunk restriction. (*Id.*)

8.    Plaintiff asked that he be sent to Bryan Hospital for a second opinion. Danaher stated that it was his impression that Plaintiff needed to be admitted to the NSP hospital at the prison to evaluate and monitor his status. (*Id.*)

6

9.      Danaher states that at this suggestion Plaintiff left the medical facility upset.  (*Id*.)  Plaintiff states that he went back to his unit to get his belongings ready but was not allowed to return to the hospital.  (Filing No. 42 at CM/ECF pp. 3-4.)

10.      On March 24, 2004, Plaintiff saw PA John Bagley and was issued a lower bunk pass.  (Filing No. 42 at CM/ECF p. 4.)  On April 7, 2004, Plaintiff again met with Bagley and told Bagley that he believed the February 1, 2004 fall worsened his back condition.  (Filing No. 113, Attach. 8.)  Plaintiff requested an MRI.  Bagley noted that Plaintiff was having difficulty accepting that he has chronic back pain. (*Id*.)  Bagley performed a physical exam of Plaintiff, prescribed Plaintiff medication, and extended his lower bunk pass for thirty days, but determined further testing was not necessary at that time.  (*Id*.)

11.      On March 26, 2004, Plaintiff was found guilty of misconduct.  (Filing No. 42 at CM/ECF p. 4.)  On March 31, 2004, Plaintiff states he informed Defendant Exstrom of his desire to appeal the guilty finding.  (*Id*.)  Defendant Exstrom instructed Plaintiff to move from one lower bunk to another lower bunk.  (Filing No. 115 at CM/ECF p. 9.)  Plaintiff would not move.  (*Id*.)  Defendant Exstrom sent Plaintiff to segregation.  (*Id*.)

12.      Plaintiff states that on June 19, 2004 and January 20, 2005 his mail was opened without his permission.  (Filing No. 42 at CM/ECF p. 5.)

Grievances Filed by Plaintiff

13.      On February 28, 2004 Plaintiff submitted a three page kite to Harold Clarke complaining of the events that occurred on February 1, 2004.  (Filing No. 42 at CM/ECF p. 4.)

14.    The kite was marked received on March 1, 2004.  (*Id*.)  Defendants submitted to the court a Step Two Central Office Appeal Response and Reasons for Decision reached in response to the medical grievance filed by Plaintiff.  (Filing No. 113, Attach. 6.)  The document states that the appeal was received on April 19, 2004 and the response is dated April 26, 2004.   The Response states in relevant part that:

> You were provided medical care for your back problems and for the fall. While you believe that additional testing should be done, the medical staff has not determined that the tests are necessary.  The medical staff, including the nurses, has the training and experience to examine patients, determine the person's medical needs and to order appropriate tests and treatment.  If you are still having problems and have not been to medical recently, you should submit a request asking for an appointment to discuss your situation and the appropriate course of treatment.

(*Id*.)

## III.    STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue.  *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion.  *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## IV.   LEGAL ANALYSIS

Plaintiff seeks relief against Defendants pursuant to 42 U.S.C. § 1983. In their Motion for Summary Judgment, Defendants argue that Plaintiff's claims against Defendants in their individual capacity are barred by the doctrine of qualified immunity.

To obtain relief under 42 U.S.C. § 1983, Plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that a person acting under color of state law caused the deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). To withstand a motion for summary judgment on qualified-immunity grounds, a plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the government official knew or should have known that his alleged conduct violated this clearly established right. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

### A.   Eighth Amendment Excessive Force Claims

9

The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain" by their jailers. *U.S. v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007). When jail officials are alleged to have used excessive force against a prisoner, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "Courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8 (citations omitted). "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994). Plaintiff must prove actual injury, and cannot recover for *de minimus* use of force unless the *de minimus* force is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

## 1.    *Excessive Force Claim Against Richardson and Jara*[2]

Plaintiff alleges that Defendants Richardson and Jara violated the Eighth Amendment prohibition against cruel and unusual punishment by using excessive force in transporting Plaintiff to holding.  Specifically, Plaintiff claims that Defendants used excessive force by taking Plaintiff to holding when he refused to return to his bunk, handcuffing Plaintiff despite complaints of a pinched nerve, requiring Plaintiff to walk on snow and ice causing him to fall on his handcuffs,

---

[2]The court is taking the recitation of Plaintiff's claims from his Second Amended Complaint. (*See* Filing No. 42 at CM/ECF pp. 6-7.)  Plaintiff brought this claim against Defendants Chase, Richardson and Jara.  But because Defendant Chase was dismissed from this action for lack of service of process, the court will analyze this claim as against Defendants Richardson and Jara only.

leaving Plaintiff lying on the ground in pain for 20 minutes, and throwing Plaintiff into a wheelchair.

Here Plaintiff has failed to establish an Eighth Amendment violation.  The undisputed facts show that Plaintiff was instructed to return to his bunk and refused to follow this instruction.  Plaintiff was warned that if he failed to comply with this instruction he would be taken to holding.  Plaintiff continued to ignore the guard's instructions.  At this point, it was reasonable for the guards to see the need to keep order by transporting Plaintiff to holding.  The guards did not identify any medical restrictions in Plaintiff's file which would preclude the use of handcuffs.  (*See* Filing No. 123, Attach. 1.)  Therefore, in order to transport Plaintiff safely he was placed in handcuffs.  This is clearly a necessary security precaution and does not support a finding of malicious and sadistic use of force.

Furthermore, even taking the Plaintiff's recitation of the facts as true, that the guards then forced Plaintiff to walk on snow and ice while handcuffed causing him to fall, left Plaintiff lying on the ground in pain for twenty minutes, and then forcibly threw Plaintiff into a wheelchair, this was not a course of action taken by the prison officials to injure Plaintiff.  Rather the guards were attempting to transport Plaintiff to holding and he fell.  Under the facts of this case, any wrongdoing on the part of the guards in their transporting of Plaintiff to holding was not "harmful enough" to rise to the level of a constitutional injury.  Therefore, based on the facts in this case, Plaintiff has failed to establish that Defendants violated the Eighth Amendment and Defendants are granted summary judgment on this claim.

## 2.     *Excessive Force Claim against Bailey*

Plaintiff next alleges that Defendant Bailey violated the Eighth Amendment by giving an order to Caseworker Johnson that, upon Plaintiff's return from holding on February 1, 2004, Plaintiff must return to his top bunk.

Again, Plaintiff has failed to establish an Eighth Amendment violation.  When Plaintiff returned to his unit on February 1, 2004, there was still no medical documentation that he was unable to return to his top bunk.  Thus, any order by Bailey was an attempt to keep order in the unit and was not a course of action taken by a prison official to injure Plaintiff.  Accordingly, summary judgment is granted for Defendant on this claim.

## B.   Eighth Amendment Retaliation Claims

A prisoner's Eighth Amendment rights are violated if prison officials "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir.1993).   A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline.  *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007.) The plaintiff-inmate has a heavy evidentiary burden to establish a prima facie case. *Murphy v. Mo. Dept. of Corr.*, 769 F.2d 502, 503 n. 1 (8th Cir.1985). Merely alleging that an act was retaliatory is insufficient.  *Meuir*, 487 F.3d at 1119.

### 1.   Retaliation Claim against Richardson[3]

Plaintiff alleges that Defendant Richardson retaliated against him and sent him to holding for filing complaints against staff and requesting medical attention.

---

[3]Plaintiff brought this claim against Defendants Chase and Richardson. Because Defendant Chase was dismissed for lack of service of process, the court will analyze this claim as against Defendant Richardson only.

Here, Plaintiff has failed to establish a prima facie case of retaliation. Plaintiff has failed to set forth any evidentiary basis for this claim, and Plaintiff's mere allegation that Richardson retaliated against him is insufficient to establish a prima face case. Furthermore, the undisputed record shows that Richardson had a proper motive for transporting Plaintiff to holding. On February 1, 2004 Plaintiff was instructed to return to his bunk and he refused to follow this instruction. Plaintiff was warned that if he failed to return to his bunk he would be taken to holding.

Therefore, because Plaintiff has failed to show that Richardson's actions were motivated by some impermissible motive, summary judgment is granted in favor of Defendant on Plaintiff's claim of retaliation.

### 2.    *Retaliation Claim against Exstrom*

Plaintiff next claims that Exstrom retaliated against him by falsely charging Plaintiff with misconduct in retaliation for Plaintiff filing complaints against staff. While not exceedingly clear, it appears that Plaintiff is specifically alleging that Exstrom instructed Plaintiff to move from one lower bunk to another lower bunk, and sent Plaintiff to segregation for his refusal to move to the other lower bunk, in retaliation for Plaintiff's decision to appeal the March 26, 2004 determination that Plaintiff was guilty of misconduct.

Here again, Plaintiff fails to establish a prima facie case for retaliation. Plaintiff does not provide the court with any evidentiary support for his claim of retaliation, and Plaintiff's mere allegation that Exstrom's actions were retaliatory is insufficient to establish a prima facie case of retaliation. Furthermore, the record shows that Exstrom had a proper motive for sending Plaintiff to segregation. Plaintiff was instructed to move from one lower bunk to another lower bunk. When Plaintiff refused to move Exstrom sent him to segregation.

Therefore, because Plaintiff has failed to show that Exstrom's actions were motivated by some impermissible motive, summary judgment is granted for Defendant on this claim.


**C.      Free Exercise to Redress and File Grievances Claim**

Plaintiff alleges that Defendants Richardson, Exstrom, and Kenney caused Plaintiff mental anguish and emotional injury by placing Plaintiff on "correspondence restriction."

"In the First Amendment context. . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).   Accordingly, the Supreme Court has instructed that "prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. . . ."  *Id*.

In addition, "the Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).   Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. *Singleton v. Cecil*, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir. 1999) (*en banc*).   Further, substantive due process protects prisoners from conduct which "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citations omitted).  Substantive due process rights are implicated when a state actor "engages in conduct that is so outrageous that it shocks the conscience or otherwise offends

14

judicial notions of fairness, or is offensive to human dignity." *Id.* (citations and quotations omitted).

Based on the submissions of the parties, it is not clear exactly what limitations "correspondence restriction" places on an inmate. However, a careful review of Plaintiff's Second Amended Complaint indicates that Plaintiff's specific challenge to his placement on "correspondence restriction" is that he was prohibited from "free exercise to redress or file grievances." (*See* Filing No. 42 at CM/ECF p. 4.) The undisputed facts of this case show, however, that Plaintiff filed multiple grievances regarding the February 1, 2004 incident. (*See* Filing No. 129, Attach. 2, at CM/ECF p. 34, Filing No. 129, Attach. 3, at CM/ECF pp. 7, 12, 14, 16, 18.) Indeed, by his own admission, Plaintiff filed a three-page kite complaining of the February 1, 2004 incident to Harold W. Clarke on February 28, 2004. (Filing No. 42 at CM/ECF p. 4.) Plaintiff received a response to this kite, and had an opportunity for review. (*See* Filing 129, Attach. 2, at CM/ECF p. 34, Filing No. 129, Attach. 3, at CM/ECF pp. 7, 12, 14, 16, 18, Filing No. 113, Attach. 5.)

Therefore, any adverse effect that Plaintiff suffered by his placement on "correspondence restriction" was temporary, and did not prevent Plaintiff from actually filing grievances. Accordingly, summary judgment is granted for Defendants on this claim.

## D.   Eighth Amendment Claim of Inadequate Medical Care [4]

Plaintiff alleges that Defendants Kohl and Kenney denied him adequate medical care because they failed to properly train medical and security staff.

---

[4]Plaintiff brought this claim against Defendants Stelling, Danaher, Kohl, Clarke, Kenney and Elliot. Because the claims against Defendants Stelling, Danaher, Clarke and Elliot were dismissed, the court will analyze this claim as against Defendants Kenney and Kohl only.

Defendants counter that Plaintiff has failed to assert the facts necessary to support a claim for supervisory liability against Defendants Kenney and Kohl.

A supervisory official cannot be held liable for another person's alleged misconduct absent the supervisor's "sufficient personal involvement" or "tacit authorization" of the conduct at issue. *Williams v. Kelso*, 201 F.3d 1060, 1067 (8th Cir. 2000) (citations omitted).  In other words, a supervisory official may not be held personally liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by other persons. *See, e.g. Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (stating "[s]ection 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights."); *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (concluding that supervisor liability arises only if a supervisor directly participates in the constitutional violation, or failure to train constitutes the moving force which caused the alleged constitutional deprivation).  Moreover, "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995)).

Furthermore, "a § 1983 claim against a municipality or supervisor, based on an alleged policy or custom, or an alleged failure to adequately train or supervise subordinates, must be dismissed if it is determined that the subordinates did not violate the claimant's constitutional rights." *Neu v. County of Benton*, No. 06-601, 2007 WL2454127 at *6  (August 23, 2007 D. Minn.)  (citing *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (holding that, where prisoner-plaintiff was unable to show that his medical care was "constitutionally deficient," he could not prevail on his related claim that prison administrators did not adequately train their staff)).

Here, Plaintiff has failed to establish a constitutional violation by Defendants Kohl and Kenney.  Plaintiff's Second Amended Complaint alleges no personal

involvement in the medical treatment of Plaintiff by Defendants Warden Kenney and Medical Director Kohl. Moreover, Plaintiff has failed to establish a claim for medical indifference by Defendants' subordinates. A prisoner-plaintiff seeking relief for claims relating to his medical care must allege that a defendant-prison official was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff must also allege that he had objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn* 491 F.3d 394, 396-97 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006). "[S]ociety does not expect that prisoners will have unqualified access to health care. Therefore, 'deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104).

However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition:

> . . . does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no

17

constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted).

Here, Plaintiff's injuries related to what he claims was a pinched nerve that was worsened on February 1, 2004 when he fell on the snow and ice. There is, however, no evidence in the record that Plaintiff's back injury before or after the fall is a serious medical condition. A review of Plaintiff's prison file before the fall did not show that Plaintiff had any medical restrictions due to back injuries. The only evidence in the record that his medical condition before the fall was serious are the x-rays that Plaintiff reviewed with PA Danaher on February 5, 2004. These x-rays showed that "maybe" Plaintiff had degenerative joint disease. But Plaintiff does not set forth a diagnosis by a physician that degenerative joint disease is a serious medical condition. Moreover, when Plaintiff was seen again in March and April of 2004 by PA Bagley, Bagley acknowledged that it is likely Plaintiff suffers from back pain, but that based on his physical tests he did not need further treatment or testing at that time.

Furthermore, even if Plaintiff's back injury constituted a serious medical condition, Plaintiff received treatment for his back. He was seen by medical staff before the February 1, 2004 incident and x-rays were taken to determine what was causing his back pain. After falling on the snow and ice, Plaintiff was seen by Nurse Stelling who gave him acetaminophen and ice for his back. Plaintiff was seen shortly after the fall on February 5, 2004 by Danaher, and Danaher's notes indicate that they reviewed x-rays of Plaintiff's back which showed that he did not have a shoulder injury but may be suffering from mild degenerative joint disease. Plaintiff was seen again in March and April by PA Bagley and was treated for his back pain with prescription medication, given a bottom bunk pass and was scheduled for a follow-up appointment. While Plaintiff wanted additional x-rays and an MRI, the medical staff

18

determined this was not necessary.  Plaintiff's complaints regarding the treatment he received for his back injury amount to "disagreement with a medical judgment," which is not enough to sustain an Eighth Amendment claim.  *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993).

Accordingly, because Plaintiff has failed to establish either that Defendants or their subordinates provided Plaintiff with constitutionally-deficient medical treatment, summary judgment will be granted in favor of Defendants Kohl and Kenney on this claim.

### E.      Fourteenth Amendment Due Process Claim[5]

Plaintiff alleges that Defendant Exstrom denied Plaintiff due process by preventing him from filing his appeal.  However, a review of Plaintiff's submissions show that Plaintiff's specific claim is that he filed three appeals with his caseworker Byron Smith and that two of the appeals were not considered because they were not timely filed by Smith.

Because Byron Smith was dismissed from this action, and Plaintiff does not assert that Defendant Exstrom caused the untimely filing of his appeals, summary judgment for Defendant Exstrom is granted on this claim.

### F.      Free Access to the Court Claim[6]

---

[5]Plaintiff brought this claim against Defendants Smith and Exstrom.  Because the claims against Defendant Smith were dismissed, the court will analyze this claim as against Defendant Exstrom only.

[6]Plaintiff brought this claim against Defendants Kenney and the Nebraska Department of Corrections.  But because the Nebraska Department of Corrections was dismissed as a party to this action, the court will analyze this claim as against Defendant Kenney only.

Plaintiff alleges that Defendant Kenney violated his First Amendment right and denied him free access to the court because Plaintiff's legal mail was opened without his permission.

As set forth above, a supervisory official cannot be held liable for another person's alleged misconduct absent the supervisor's "sufficient personal involvement" or "tacit authorization" of the conduct at issue. *Williams v. Kelso*, 201 F.3d 1060, 1067 (8th Cir. 2000) (citations omitted). In other words, a supervisory official may not be held personally liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by other persons. *See, e.g. Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (stating "[s]ection 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights."); *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (concluding that supervisor liability arises only if a supervisor directly participates in the constitutional violation, or failure to train constitutes the moving force which caused the alleged constitutional deprivation). Moreover, "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995)).

Plaintiff does not allege that Kenney had any direct involvement in opening his mail. Rather, Plaintiff argues that because "Kenney and Dept of Corr. are responsible for the Operations at N.S.P. . . . [they are] sole responsible for Plaintiff's legal mail being opened without Plaintiff's permission." This is insufficient to establish his claim. Therefore, summary judgment is granted for Defendant on this claim.

### MOTION TO DISMISS PLAINTIFF'S MOTION FOR INTERVENTION

Plaintiff filed a Motion to Intervene on June 18, 2007, claiming that his legal materials were taken from him by the Jefferson County Sheriff and asking this court to provide him with a copy of the court file or to order the Sheriff to provide him with a copy of the court file. (Filing No. 118.) This court granted the motion in part and denied the motion in part. (Filing No. 121.) The court denied Plaintiff's request for a copy of the court file but instructed counsel for Defendants to provide Plaintiff with a copy of any motion, brief, or evidence submitted in response to the court's Memorandum and Order. Additionally, the court ordered the State of Nebraska to investigate and determine whether Plaintiff's copy of his file was taken from him by the Jefferson County Sheriff. (*See* Filing No. 121 at CM/ECF p. 4.) In response to the court's Memorandum and Order, the Defendants filed a Motion to Dismiss Plaintiff's Motion to Intervene accompanied by the Affidavit of Matthew J. Schultz. (Filing No. 124.)

In their motion, Defendants request that the court dismiss Plaintiff's Motion to Intervene because the Affidavit of Matthew Schultz proves that the Jefferson County Sheriff's office gave Plaintiff's legal documents to Plaintiff's mother on or about June 1, 2007. In the affidavit, Schulz states that on June 1, 2007, after arriving at district court. Plaintiff advised Schulz to give his legal paperwork to his mother. (Filing No. 124-2, at CM/CF p. 2.) Schulz stated that he then transferred all of Plaintiff's belongings that were in the Sheriff's Office van to Plaintiff's mother's custody and she placed them in her vehicle. (*Id*.) In response to the motion and Schulz's affidavit, Plaintiff does not dispute that he told Schulz to give the legal documents to his mother; rather, he claims that Defendants have not provided any evidence that they had the authority to give his legal documents to his mother. (Filing No. 126, at CM/ECF pp. 1, 3-4.) Further, Plaintiff states that he is having difficulty obtaining the documents from his mother. (*Id*.)

Schulz's Affidavit is evidence that the Jefferson County Sheriff was directed to give Plaintiff's documents to his mother. Based on Schulz's affidavit and

Plaintiff's response, the court is satisfied that the Jefferson County Sheriff's Office did not improperly take Plaintiff's legal documents, therefore, Defendants' Motion to Dismiss Plaintiff's Motion to Intervene is granted.


IT IS THEREFORE ORDERED that:

1.     Defendants' Motion for Summary Judgment (filing no. 131) is granted.

2.     This action and Plaintiff's claims against Defendants Richardson, Exstrom, Kenney, Kohl, Bailey, and Jara in their individual capacities are dismissed with prejudice.

3.     A separate judgment will be entered in accordance with this Memorandum and Order and filing nos. 96 and 54.

4.     Defendants' Motion to Dismiss Plaintiff's Motion to Intervene (filing no. 124) is granted.

5.     Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment (filing no. 127) is denied.

March 6, 2008.                          BY THE COURT:

                                        *s/Richard G. Kopf*
                                        United States District Judge